F I L E D

JAN 2 9 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES FEDERAL DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXENDRIA DIVISION

Moniqua D. Bumpers                      )
1835 Good Hope Road. SE                 )   Case No. 1:14 CV 101
Washington D.C. 20020                   )            AJT /TCB
    Plaintiff,                          )
                                        )   Civil Complaint for Violation of Title VII &
    vs.                                 )   the American Disabilities Act, Amendments
Diamond Solutions Inc.                  )   Act of 2008, 42 U.S.C. § 12101 *et al* & the
12150 Monument Drive                    )   Fairfax County Code, Human Rights
Fairfax, VA 22033                       )   Ordinance, § 11-1-5.
    Defendants.                         )
                                        )   **Jury Demand**
_____)

## PRELIMINARY STATEMENT

Moniqua D. Bumbers (Ms. Bumpers) by and through her undersigned counsel, bring this

action of discrimination and retaliation as under Title VII and the American Disabilities Act

Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101 *et. seq*, and the Fairfax County Human

Rights Ordinance, § 11-1-5, against employer Diamond Solutions Inc.

Diamond Solutions Inc (DSI) is a government contractor which provides medical records

technician services in the greater Washington D.C. metropolitan area to both government clients

and private hospitals. Ms. Bumpers was employed by DSI as a "Medical Appointing Clerk" from

January 24, 2012 to the last day of her termination or December 19, 2012. She earned $31,000

per year.

Ms. Bumpers has a medical history of stomach ulcers and anxiety attacks. The stomach

ulcers affecting her digestive system result in severe stomach cramps and pains, substantially

limiting major life activities of: standing, sitting, walking, reaching, bending, speaking,

breathing, reading, concentrating, thinking, communicating, interacting with others and working.

Relief from the stomach pains may sometimes be achieved by taking frequent bathroom breaks. Occasionally, the onset of stomach cramps or ulcers, is followed by an anxiety attack resulting in tightening of the chest muscles, chest pains and shortness of breath. She first experienced these symptoms in 2008, and it has continued unabated. In 2013, she made four (4) visits to the Emergency Room because of her physical ailments. She continues to see a physician to address her medical condition. She also suffers from major depressive disorder because of childhood trauma as a result of a sexual assault, and when she suffered three (3) miscarriages in 2009.

The Human Resources (HR) Director Ms. Barbara Wright was made aware of her physical ailments effecting her digestive system and brain function, soon after her employment, because Ms. Bumpers would frequently take time off to visit her doctor to address her physical ailments. She would send an email to Ms. Wright when she took time off to visit her doctor and she would also submit medical documents and doctor's notes to DSI. Despite this, DSI never engaged in the interactive process to enquire if she needed any accommodation to address her disabilities, and later retaliated against Ms. Bumpers by issuing her a Performance Improvement Plan (PIP) for these employer sanctioned excused absences, and then subsequently terminated her.

Also, when on September 7, 2012, she discussed her medical and physical ailments with her DSI supervisor Mr. Jeffery Bolling, he sarcastically said "they have medication for people like you." Five (5) days after this conversation, Mr. Bolling had segregated Ms. Bumpers by placing her at the back of the office without an assigned desk. Other similarly situated medical appointment clerks without a disability, were not segregated. Mr. Bolling also initiated surveillance of Ms. Bumpers by following her to the bathroom; this behavior would continue uninterrupted for the next 21 days, or until her termination on December 19, 2012.

On December 10, 2012, Ms. Bumpers experienced stomach pains at work, followed by an anxiety attack, resulting in chest pains and tightening of the chest muscles. She asked Mr. Bolling if she could leave to see a doctor. He said, "No." She then called DSI Human Resources (HR) to request permission to see a physician. HR allowed her to see a physician. On this day, she visited the emergency room at the 'United Medical Center." She discussed her ailments with the medical physician who advised her to seek the "on call" shift at DSI.

On December 12, 2012, Ms. Bumpers sends an email to Ms. Wright, the HR Director at DSI for a reasonable accommodation to the "on call" shift per her physician's instructions. She never receives a reply for accommodations. On December 13, 2012, Ms. Bumpers visited her primary physician Dr. Katherine Hurd, who again recommends an accommodation to the "on call" shift. On December 17, 2012, Ms. Bumpers again sends an email to Ms. Wright requesting accommodation to the "on call" shift, she again never receives a reply. On December 18, 2012, she reports to work and experiences stomach pain affecting the digestive organs, chest pains and hyperventilation. Per company policy she visits Mr. Bolling to inform him of her physical ailments but is unable to locate him at his desk. She then telephones HR Administrative Assistant Ms. Samantha Lawrence and informs her that she needs to leave for the day for a visit to the doctor, and asks to speak with DSI Chief Executive Officer Mr. Earl Brown. Mr. Brown informs Ms. Lawrence to have Ms. Bumpers hold the line for five minutes. She holds the line for three minutes before feeling her chest muscles contracting; fearing a heart attack she leaves the work premises to visit the emergency room. When Ms. Bumpers arrived to work on December 19, 2013, she was terminated by Ms. Wright for leaving the work premises without permission. This is simply false as she had informed Ms. Lawrence of her intent to leave work.

Post-termination, Ms. Bumpers applied for unemployment insurance from the Virginia Employment Commission. She was denied unemployment insurance because DSI informed the Commission that she was terminated for cause, in this case leaving the work premises without permission.  Consequently, this action now follows.

## I.  PARTIES

1.  Ms. Bumpers was employed by the Defendant Diamond Solutions Inc., as a "Medical Appointing Clerk" from January 24, 2012 to the last day of her termination or December 19, 2012. She earned $17/hour or $31,000 per year. As a Medical Appointing Clerk, she is required to answer the telephone, input data and information on to computer software so as to schedule medical appointments, and engage in excellent customer service. Ms. Bumpers suffers from chest pains, stomach ulcers, extreme depression and anxiety and has a "record of such impairments"[1] since 2008. These physical and mental impairments[2] substantially limits the following major life activities, in this case: eating, sleeping, walking, standing, sitting, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working[3]. She continues to experience these mental and physical impairments and continues to visit a medical provider.

2.  Ms. Bumpers is a qualified individual with a disability who is able to perform the essential functions of her employment with or without an accommodation as under 42

---

[1] 29 C.F.R. § 1630.2 (g)(1)(ii)

[2] 29 C.F.R. § 1630.2 (h)(2). The EEOC enforcement guidance cites the following example of "emotional or mental illness": anxiety disorders. *EEOC Enforcement Guidance on the Americans with Disabilities Act & Psychiatric Disabilities.* (1997). http://www.eeoc.gov/policy/docs/psych.html (last visited 1/13/2014)
[3] 29 C.F.R. § 1630.2 (i).

U.S.C. §1211 (8). She is also a disabled person under 29 C.F.R. § 1630.2 (g)(1) and an employee as under Fairfax County Code § 11-1-2 of the Human Rights Ordinance.

3. Formed in 2002, Diamond Solutions Inc., is a business that works with a diverse range of administrative and personnel support services to federal, state, and local government agencies as well as private sector clients. Diamond Solutions Inc., is a covered entity and an employer as under 42 U.S.C. § 1211 (2), and as under the Fairfax County Code § 11-1-2. They have locations in Washington D.C., Maryland and Virginia.

## II.  JURDICTION & VENUE

4. This Court has subject matter jurisdiction on her Title VII, American Disabilities Act (ADA) claims as under 42 U.S.C. §12101 *et.seq.,* and 28 U.S.C § 1331. This Court also has supplemental jurisdiction on her state law claims as under the Fairfax County Code under 28 U.S.C. §1367.

5. Venue is proper in the Eastern District of Virginia for Alexandria as under 28 U.S.C. §1391, because both the Plaintiff and the Defendant are located within the Court's district, and also a substantial part of the claims and defenses to the action occurred within the Court's district, in that Plaintiff was hired in the Eastern District and worked eleven (11) of her twelve (12) months in the Eastern District.

## III. EXHAUSATION OF ADMINISTRATIVE REMEDIES

6. On February 26, 2013, Ms. Bumpers filed a charge with the Equal Employment Opportunity Commission (EEOC), charge number 570-2013-00907, by completing and signing a Form 5 alleging disability discrimination and retaliation. A copy was also cross filed by the EEOC with the Fairfax County Human Rights Commission.

7. On Monday May 20, 2013, the Washington EEOC Field Office scheduled an informal mediation amongst the parties. It was attended by Ms. Bumpers, her counsel and as the sole representative of DSI, Ms. Barbara Wright. An outline of the allegations here, were read to Ms. Wright by Ms. Bumpers.

8. On July 2013, after Ms. Bumpers was denied her unemployment insurance, she filed another charge with the EEOC, charge number 570-2013-01384 alleging retaliation because of her prior protected activities. A copy was also cross filed by the EEOC with the Fairfax County Human Rights Commission.

9. On October 31, 2013, the EEOC issued a Notice to Sue for both charges. It was received by the Plaintiff on November 6, 2013.

10. On January 2014 an action was timely filed with this Court.

11. Ms. Bumpers has no further administrative obligations.

## IV. STATEMENT OF FACTS

12. Ms. Bumpers is a certified medical technician who obtained her certificate from MedTech College in Washington D.C. Prior to her employment with the Defendant, she was employed for two years as a Medical Technician at the Walter Reed Army Medical Center in Washington D.C .

13. On January 24, 2012, Ms. Bumpers began her employment with Diamond Solutions Incorporated (DSI) as a "Medical Appointing Clerk" earning $17/hour or $31,000 per year. At the time of her interview, she was told by the DSI Human Resource Director Ms. Barbara Wright, that all work matters are to be discussed with the team leads only.

14. DSI had a government contract to provide medical services for actives military employees. As a Medical Appointing Clerk, Ms. Bumpers' duties were to schedule medical appointments for military staff with hospitals and physicians in the greater Washington D.C. Metropolitan area. She worked at the Rosslyn, Virginia location. To the best of our knowledge, DSI employs staff on a full time, part time and on call status. Ms. Bumpers was employed on a full time status at 40 hours per week.

15. Her immediate supervisor and team lead was Ms. Sharon Abbot. She was Ms. Bumper's team lead from January 2012 – April 2012. She was then transferred to Mr. Jeffery Bolling's team, who served as her team lead from April 2012-December 19, 2012, or the last day of her termination. Both her team leads informed Ms. Bumpers, that her start time was from 8am-5pm. DSI however also had a flex time policy, whereby unless an employee was more than 10 minutes late for the start of a shift, an employee need not call her team leads to inform them of their delay. Ms. Bumpers was to work 40 hours per week.

16. Her work area consisted of working with other "Medical Appointing Clerks" a majority of who are female. They worked in close quarters in an open space, each assigned to their own computer terminal.

17. From January 24, 2102 to August 2012, she performed her work duties diligently professionally and without incident. Infact during these times, she was frequently commended upon by the government client and by both Ms. Abbot and Mr. Bolling about her professionalism and great customer service. To the best of our knowledge, neither Mr. Bolling nor Ms. Abbot gave Ms. Bumpers a negative performance review.

### Ms. Bumpers is a Disabled Person Within the Meaning of the ADA

**18.** During the January 2012-August 2012 period, Ms. Bumpers visited the Emergency Room (ER) 5-7 times to address her stomach pains and ulcers. The Emergency Room physicians would inturn ask her to follow up with her personal physician Dr. Katherine Hurd, at "East of the River Family Health Center" in Washington D.C. Dr. Hurd prescribed her with an inhaler to combat the shortness of breaths, along with other medications. Her physician also advised her to take frequent bathroom breaks. She continues to see a medical provider to discuss her ailments, and consequently has a record of such an impairment as under the ADAAA.

**19.** On some of these occasions, when the stomach ulcers would affect her during the work day, because of the travel involved between Rosslyn and Washington D.C., she would take the whole day off to visit the ER or her physician Dr. Hurd. Ms. Bumpers would travel by public transportation.

**20.** The stomach ulcers would result in severe stomach cramps and pains, substantially limiting major life activities of: standing, sitting, walking, reaching, bending, speaking, breathing, reading, concentrating, thinking, communicating, interacting with others and working. Sometimes the pain can be so severe that it can bring on an anxiety attack, further resulting in the tightening of the chest muscles, and chest pains which in turn would affect her ability, to breathe. These episodes can last anywhere from 20 minutes to a couple of hours in a day. Occasionally to relieve the stomach pain, she would engage in the self act of emesis. The stomach pain can sometimes be relieved if she is allowed frequent bathroom breaks. She has been experiencing these symptoms since 2008 and continues to do so.

**Ms. Bumpers is Qualified To Perform the Essential Functions of the Job With or Without An Accommodation**

21. From the January 2012-April 2012 time period, her team lead Ms. Abbot was aware of her physical ailments, on account that she would submit copies of her medical leave to both Ms. Abbot and Ms. Wright. Ms. Abbot was also aware of Ms. Bumpers' needs for frequent bathroom breaks, so as to lessen the frequency of her stomach attacks or the pain associated from it. She thus continued to perform her job functions of answering telephone calls, inputting data and scheduling medical appointments.

22. Sometime around mid or late April 2012, Ms. Bumpers was transferred to Mr. Bolling's team. Mr. Bolling was now her team lead.

23. Around this time, she had another ulcer attack and spent about 30 minutes in the bathroom. Upon her return to her work station, she is asked by Mr. Bolling why she was away from her desk. Ms. Bumpers informed him that she suffers from stomach ulcers and pains, and to that end, requires frequent bathroom breaks. Mr. Bolling says this is fine, but that when she needs to visit the bathroom, she is to first inform him. She felt uncomfortable reporting her bathroom visits to a male superior, and so told him, that she would leave a note at her desk instead.

24. Mr. Bolling however would continue to harass her about her bathroom breaks and that she needs to be working rather than spending the time in the washroom. As he was sitting a mere 20 feet away from her, he began to closely monitor her movements. He would not do so for other similarly situated employees or medical appointing clerks.

25. On or about Friday September 7, 2012, Ms. Bumpers had a detailed discussion with Mr. Bolling about her physical and mental ailments. At which point he sarcastically replied, "they have medication for people like you." On this same day, Ms. Bumpers sends Mr. Bolling an email that he found her comments to be disrespectful.

26. A week later, or on Friday September 14, 2012, she was emailed a new seating location by Mr. Bolling. She learned that she was the only employee to be stationed at the end of the hall, without a designated work station. No other similarly situated Medical Appointing Clerk was segregated in this way. Her segregation at the end of the hall, also meant that she was now further away from the bathroom. Mr. Bolling would also now physically follow her to the washroom, and take account of the time spent. This would continue everyday until her termination on December 19, 2012.

27. On November 9, 2012, her office moved to the Bethesda, Maryland location. She would remain in this location until her termination five (5) weeks later or December 19, 2012. Her team lead continued to be Mr. Bolling and she continued to be segregated from the rest of the staff at this new location.

28. About two months later, or November 20, 2012, she was placed on a PIP by the HR Director Ms. Wright. Ms. Wright is not her direct supervisor and is not aware of her work performance. On this day, she is asked to attend a meeting with Ms. Wright at the DSI conference room. The only participants were Ms. Wright and Ms. Bumpers. After closing the door, Ms. Wright asks, if she knows what a Performance Improvement Plan or a PIP is. Ms. Bumpers says, "No." Ms. Wright smiles. She then proceeds to tell her that her attendance has not been regular and if she has found suitable child care for her (Ms. Bumpers) daughter Destiny (then age 11). Ms.

Bumpers says she has. Ms. Wright then informs her that she would like Destiny to attend school with her (Ms. Wright's) daughter in the Fairfax County schools. She then asks if Destiny's father plays an active role in her life. Ms. Bumpers replies that she is a single mother. Ms. Wright says, in order for Destiny to attend the Fairfax County schools, she (Ms. Wright) would need legal custody of Destiny. Ms. Bumpers objects to this demand. Ms. Wright's face turns red. Ms. Bumpers then informs her that "Mr. Bolling keeps following me to the bathroom, and I am sure he has come to you about this." Ms. Wright snaps, and says, "You are a liar! Mr. Bolling has never come to me about this!" Ms. Wright then said, "I see that you are upset." Mr. Wright calms down and offers to buy Ms. Bumpers thanksgiving dinner and to take Destiny for a trip to Hawaii with her family. The meeting then comes to a close.

29. Nothing on this day is therefore discussed about attendance or other complaints in the PIP. To date, Ms. Bumpers has also never been provided a copy of the PIP. Ms. Bumpers was also never provided any instruction in improving her attendance. The next day, the offer by Ms. Wright to take Destiny to Hawaii for vacation, is also rescinded.

30. Six days after the issuance of the PIP or November 26, 2012, Mr. Bolling would have two other employees aid him in the following and monitoring of Ms. Bumpers' bathroom visits. This would continue uninterrupted until she was terminated on December 19, 2013.

31. On December 10, 2012, Ms. Bumpers again experienced stomach pains at work, followed by an anxiety attack, resulting in chest pains and tightening of the chest muscles. She asked Mr. Bolling if she could leave to see a doctor. He said, "No." She

then called DSI Human Resources to request permission to see a physician. HR

allowed her to see a physician. On this day, she visited the emergency room at the

'United Medical Center." She discussed her ailments with the medical physician that

because of the constant surveillance by Mr. Bolling, she felt restricted in taking

frequent bathroom breaks. The physician advises her to seek the "on call" shift at DSI

as an accommodation

**DSI Fails to Engage In the Interactive Process and Request for Accommodation.**

32. On December 12, 2012, Ms. Bumpers sends an email to Ms. Wright, the HR Director

at DSI for a reasonable accommodation to the "on call" shift per her physician's

instructions. She never receives a reply for accommodations. On December 13, 2012,

Ms. Bumpers visited her primary physician Dr. Katherine Hurd, who recommends

that she see a psychiatrist to discuss the work environment and constant surveillance

by DSI. Dr. Hurd also recommends a change to the "on call" shift as an

accommodation.

33. On December 17, 2012, Ms. Bumpers again sends an email to Ms. Wright requesting

accommodation to the "on call" shift, she again never receives a reply. To the best of

our knowledge, other similarly situated employees and Medical Appointment Clerks,

Ms. Sharon Malone and Kanesha (last name unknown) who were not disabled were

readily transferred to the "on call" shift.

34. On December 18, 2012, Ms. Bumpers reports to work and again experiences stomach

pain affecting the digestive organ, chest pains and hyperventilation. Per company

policy she visits Mr. Bolling to inform him of her physical ailments but is unable to

locate him at his desk. She then telephones HR Administrative Assistant Ms.

Samantha Lawrence and informs her that she needs to leave for the day for a visit to the doctor, and asks to speak with DSI Chief Executive Officer Mr. Earl Brown. Mr. Brown informs Ms. Lawrence to have Ms. Bumpers hold the line for five minutes. She held the line for three minutes before feeling her chest muscles contracting and shortness of breath; she leaves the work premises to visit Dr. Hurd. When Ms. Bumpers arrived to work on December 19, 2013, she was terminated by Ms. Wright for leaving the work premises without permission. This is not true, as she had informed Ms. Lawrence of her intent to leave work.

35. Post-termination, Ms. Bumpers applied for unemployment insurance from the Virginia Employment Commission. She was denied unemployment insurance because DSI informed the Commission that she was terminated for cause, in this case leaving the work premises without permission.

36. Presently, Ms. Bumpers is unemployed and continues to visit her doctor on her physical and mental ailments.

## V. 1ST CAUSE OF ACTION ADAAA DISCRIMINATION
### 42 U.S.C. §12112

37. Plaintiff alleges and incorporates all the above allegations.

38. Diamond Solutions Inc was at all times an employer of the Plaintiff Ms. Bumpers, for purposes of the American Disabilities Act Amendments Act (ADAAA).

39. The Plaintiff Ms. Bumpers is a disabled individual with a physical and mental impairment that substantially limits a major life activity as under the ADAAA.

40. At all times of Plaintiff Ms. Bumpers employment, Diamond Solutions Inc., had knowledge of her disability or perceived disability. Ms. Bumpers also has a record of

such an impairment and was regarded as having such an impairment by Diamond Solutions.

41. The Plaintiff Ms. Bumpers alleges that one or more of the agents, managers, supervisors, and/or employees of Diamond Solutions Inc, acting on its behalf, subjected her to discrimination on the basis of her disability or perceived disability by segregating her from other non-disabled and similarly situated colleagues, by monitoring her daily activities, including her bathroom breaks, by failing to provide reasonable accommodations for her disability, in this case by refusing to transfer her to an "on call" status and/or by terminating her employment from Diamond Solutions because of this perceived disability. Any or all of these actions, singularly or cumulatively affected her "terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

42. Defendant Diamond Solutions Inc., and its agents, managers, supervisors or employees knew of the Plaintiff's disability when they placed her on a Performance Improvement Plan, failed to accommodate her and/or subsequently terminated her. These and other disparate treatments by the Defendant constitute illegal discrimination by Diamond Solutions Inc., because of Ms. Ms. Bumpers's disability or perceived disability. Any or all of these actions, singularly or cumulatively affected her "terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

43. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff Ms. Bumpers, has

also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

**44.** As a consequence of Defendant's action, Diamond Solutions Inc., is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## 2ND CAUSE OF ACTION: FAILURE TO ACCOMADATE AS UNDER THE ADAAA
## 42 U.S.C. §12112

**45.** Plaintiff alleges and incorporates all the above allegations.

**46.** Diamond Solutions Inc., was at all times an employer of the Plaintiff Ms. Bumpers, and for purposes of the American Disabilities Act Amendments Act (ADAAA).

**47.** The Plaintiff Ms. Bumpers is a disabled individual with a physical and mental impairment that substantially limits a major life activity as under the ADAAA.

**48.** At all times of Plaintiff Ms. Bumpers employment, Diamond Solutions Inc., had knowledge of her disability or perceived disability. Ms. Bumpers also has a record of such impairment.

**49.** The Plaintiff Ms. Bumpers informed Defendant, Diamond Solutions Inc., of her disability and request for accommodations.

**50.** The Plaintiff Ms. Ms. Bumpers alleges that one or more of the agents, managers, or supervisors of Diamond Solutions Inc., failed to accommodate her disability and/or engage in the interactive process with the Plaintiff and/or her physician, to determine an appropriate and reasonable accommodation as required under the ADAAA.

51. The defendant subsequently not only failed to engage in the interactive process, but also subjected the Plaintiff Ms. Bumpers to an adverse employment action, by placing her on a Performance Improvement Plan, and then subsequently terminating her from employment on December 19, 2012.

52. The Defendant is unable to show that the accommodation requested would have imposed "an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5).

53. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities, and loss of retirement savings and benefits. The Plaintiff Ms. Bumpers, has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

54. As a consequence of Defendant's action, Diamond Solutions Inc., is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

### 3RD CAUSE OF ACTION: RETALIATION AS UNDER THE ADAAA.
### 42 U.S.C. §12203

55. Plaintiff alleges and incorporates all the paragraphs above.

56. Diamond Solutions Inc., was at all times an employer of the Plaintiff Ms. Bumpers, and for purposes of the American Disabilities Act Amendments Act (ADAAA).

57. The Plaintiff Ms. Bumpers is a disabled individual with a physical and mental impairment that substantially limits a major life activity as under the ADAAA.

58. At all times of Plaintiff Ms. Bumpers' employment, Diamond Solutions Inc., had knowledge of her disability or perceived disability. Ms. Bumpers also has a record of such an impairment and/or was regarded as having such an impairment by Diamond Solutions.

59. The Plaintiff Ms. Bumpers engaged in protected activity when she informed the Defendant, Diamond Solutions Inc., of her disability, request for sick leave and/or medical appointments and/or request for accommodations.

60. The Plaintiff Ms. Bumpers alleges that one or more of the agents, managers, or supervisors of Diamond Solutions Inc., failed to accommodate her disability and/or engage in the interactive process with the Plaintiff and/or her physician, to determine an appropriate and reasonable accommodation as required under the ADAAA.

61. The defendant subsequently not only failed to engage in the interactive process, but also retaliated against her, by subjecting her to an adverse employment action, by segregating her, by monitoring her daily activities, by placing her on a Performance Improvement Plan, and/or subsequently terminating her on December 19, 2012. Diamond Solutions Inc., then further retaliated against the Plaintiff, when it submitted a false basis to the Virginia Unemployment Commission to deny her, her unemployment benefits. Any or all of these actions are in violation of the Acts retaliatory provisions including but not limited to 42 U.S.C § 12203 (a) and (b).

62. Because of the close proximity of the protected activity and the adverse employment actions by Diamond Solutions Inc., a causal link can be established proving retaliation,

which would dissuade a reasonable worker from making or supporting a charge of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

63. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities, and loss of retirement savings and benefits. The Plaintiff Ms. Bumpers, has also suffered from emotional distress arising from the loss of her job, and unemployment benefits, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory and retaliatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

64. As a consequence of Defendant's action, Diamond Solutions Inc., is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## 4th CAUSE OF ACTION: DISCRIMINATION AS UNDER THE FAIRFAX COUNTY CODE, HUMAN RIGHTS ORDINANCE

65. Plaintiff alleges and incorporates all the paragraphs above.

66. Diamond Solutions Inc was at all times an employer of the Plaintiff Ms. Bumpers, for purposes of the Human Rights Ordinance, Chapter 11, § 11-1-2.

67. The Plaintiff Ms. Bumpers is a disabled individual with a physical and mental impairment that substantially limits a major life activity as under the Human Rights Ordinance.

68. At all times of Plaintiff Ms. Bumpers employment, Diamond Solutions Inc., had knowledge of her disability or perceived disability. Ms. Bumpers also has a record of

such an impairment and was regarded as having such an impairment by Diamond Solutions.

69. The Plaintiff Ms. Bumpers alleges that one or more of the agents, managers, supervisors, and/or employees of Diamond Solutions Inc, acting on its behalf, subjected her to discrimination on the basis of her disability or perceived disability by segregating her from other non-disabled and similarly situated colleagues, by monitoring her daily activities, including her bathroom breaks, by failing to provide reasonable accommodations for her disability, in this case by refusing to transfer her to an "on call" status and/or by terminating her employment from Diamond Solutions because of this perceived disability.

70. Defendant Diamond Solutions Inc., and its agents, managers, supervisors or employees knew of the Plaintiff's disability when they placed her on a Performance Improvement Plan, failed to accommodate her and/or subsequently terminated her. These and other disparate treatments by the Defendant constitute illegal discrimination by Diamond Solutions Inc., because of Ms. Ms. Bumpers's disability or perceived disability.

71. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff Ms. Bumpers, has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf,

and the stress and anxiety caused by her wrongful termination and resultant financial

hardship.

72. As a consequence of Defendant's action, Diamond Solutions Inc., is additionally liable

for attorney's fees and other costs and interest in pursuit of this litigation.

### 5th CAUSE OF ACTION FAILURE TO ACCOMADATE AS UNDER THE FAIRFAX COUNTY CODE, HUMAN RIGHTS ORDINANCE

73. Plaintiff alleges and incorporates all the above allegations.

74. Diamond Solutions Inc., was at all times an employer of the Plaintiff Ms. Ms. Bumpers,

and for purposes of the Fairfax County Code, Human Rights Ordinance, Chapter 11, §11-

1-2.

75. The Plaintiff Ms. Bumpers is a disabled individual with a physical and mental

impairment that substantially limits a major life activity as under the Human Rights

Ordinance.

76. At all times of Plaintiff Ms. Bumpers employment, Diamond Solutions Inc., had

knowledge of her disability or perceived disability. Ms. Bumpers also has a record of

such an impairment.

77. The Plaintiff Ms. Ms. Bumpers informed Defendant, Diamond Solutions Inc., of her

disability and request for accommodations.

78. The Plaintiff Ms. Ms. Bumpers alleges that one or more of the agents, managers, or

supervisors of Diamond Solutions Inc., failed to accommodate her disability and/or

engage in the interactive process with the Plaintiff and/or her physician, to determine an

appropriate and reasonable accommodation as required under the Human Rights

Ordinance.

79. The defendant subsequently not only failed to engage in the interactive process, but also subjected the Plaintiff Ms. Bumpers to an adverse employment action, by placing her on a Performance Improvement Plan, and then subsequently terminating her from employment on December 19, 2012.

80. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities, and loss of retirement savings and benefits. The Plaintiff Ms. Bumpers, has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

81. As a consequence of Defendant's action, Diamond Solutions Inc., is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

### 6TH CAUSE OF ACTION: RETALIATION AS UNDER THE FAIRFAX COUNTY CODE, HUMAN RIGHTS ORDINANCE.

82. Plaintiff alleges and incorporates all the paragraphs above.

83. Diamond Solutions Inc., was at all times an employer of the Plaintiff Ms. Bumpers, and for purposes of the Fairfax County Code, Human Rights Ordinance, Chapter 11, §11-1-2.

84. The Plaintiff Ms. Bumpers is a disabled individual with a physical and mental impairment that substantially limits a major life activity as under the Human Rights Ordinance.

85. At all times of Plaintiff Ms. Bumpers employment, Diamond Solutions Inc., had knowledge of her disability or perceived disability. Ms. Bumpers also has a record of such an impairment and/or was regarded as having such an impairment by Diamond Solutions.

86. The Plaintiff Ms. Bumpers engaged in protected activity when she informed the Defendant, Diamond Solutions Inc., of her disability, request for sick leave, medical appointments and/or request for accommodations.

87. The Plaintiff Ms. Bumpers alleges that one or more of the agents, managers, or supervisors of Diamond Solutions Inc., failed to accommodate her disability and/or engage in the interactive process with the Plaintiff and/or her physician, to determine an appropriate and reasonable accommodation as required under the Human Rights Ordinance.

88. The defendant subsequently not only failed to engage in the interactive process, but also retaliated against her, by subjecting her to an adverse employment action, by placing her on a Performance Improvement Plan, and/or subsequently terminating her on December 19, 2012. Diamond Solutions Inc., then further retaliated against the Plaintiff, when it submitted a false basis to the Virginia Unemployment Commission to deny her, her unemployment benefits.

89. Because of the close proximity of the protected activity and the adverse employment actions by Diamond Solutions Inc., a causal link can be established to indicate retaliation, which would dissuade a reasonable worker from making or supporting a charge of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

**90.** As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities, and loss of retirement savings and benefits. The Plaintiff Ms. Bumpers, has also suffered from emotional distress arising from the loss of her job, and unemployment benefits, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory and retaliatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

**91.** As a consequence of Defendant's action, Diamond Solutions Inc., is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## VI. RELIEF SOUGHT

WHEREFORE, the Plaintiff Ms. Moniqua Bumpers respectfully requests this Court to award damages in excess of Five Hundred Thousand Dollars ($500,000.00) or an amount to be proved at trial, and in addition to:

A. Enter judgment for the Plaintiff Ms. Moniqua D. Bumpers against Defendant Diamond Solutions Inc, on all Counts;

B. Declare that the conduct of Defendant is in violation of the American Disabilities Act Amendments Act of 2008 (ADAAA), and the Fairfax Human Rights Ordinance.

C. Award Ms. Moniqua D. Bumpers punitive damages, full back pay and front pay, including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses', cash awards, loss of retirement savings and benefits and other remuneration and privileges of employment retroactive to the date of any unlawful employment action found to have occurred in this case.

D. Award Ms. Moniqua D. Bumpers compensatory damages for emotional distress

injuries and loss;

E. Award Plaintiff pecuniary and out of pocket expenses;

F. Order Defendant to pay all reasonable attorneys fees, court costs, and expenses incurred by Plaintiff as a result of Defendants' actions and inactions, as well as pre judgment and post-judgment interest; and

G. Order such other equitable and legal relief as the Court deems appropriate.

## VII. JURY TRIAL DEMANDED.

Plaintiff demands a jury trial for this action.

Dated: January 29, 2014.

Respectfully Submitted,

Todd Lewis
VSB#73732
The Lewis Law Group PC
2200 Wilson Boulevard
Suite 102-50
Arlington, Virginia 22201
*Counsel for Plaintiff*
Main (202) 550-9898
Direct (703) 459-9663
Fax (703) 894-2881
Email: todd.lewis@tllgpc.com

/s/A.J. Dhali
Dhali PLLC
D.C. Bar No. 495909
1629 K. Street. NW. Suite 300
Washington D.C. 20006
T: (202) 556-1285
F: (202) 351-0518
Email: ajdhali@dhalilaw.com
*Pro Hac Vice Application To Be Filed*